# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS CHENIER,<br><br>Defendant. | 8:19CR30<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Findings and Recommendation (F&R), ECF No. 28, issued by Magistrate Judge Susan M. Bazis. The Magistrate Judge recommended that the Motion to Suppress filed by the Defendant Nicholas Chenier, ECF No. 16, be denied.  Defendant filed an Objection to the F&R, ECF No. 29, as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a).  The Government responded to the Objection, ECF No. 31.  For the reasons set forth below, the F&R will be adopted, and the Motion to Suppress will be denied.

## BACKGROUND

Defendant is charged with one count of possession with intent to distribute methamphetamine. Indictment, ECF No. 1.  Defendant seeks to suppress any evidence obtained by law enforcement on August 24, 2018, asserting that Omaha Police Detectives Andrew Ramsay (Detective Ramsay) and Cortes Clark (Detective Clark) impermissibly extended the traffic stop in order to conduct a dog sniff and lacked reasonable suspicion to conduct a dog sniff on Defendant's vehicle.  Defendant did not directly object to the Magistrate Judge's factual findings.  Having reviewed the record, the Court adopts those findings and provides the following by way of summary:

On August 24, 2018, Detective Ramsay and Detective Clark saw a Chevy Camaro fail to properly signal a traffic move, in violation of Neb. Rev. Stat. § 60-6,161, and began to follow the Camaro in their cruiser. It appeared to the detectives that the Camaro made several arbitrary turns to avoid the police cruiser and did not take the most direct route to its destination. The detectives believed the driver of the Camaro knew the detectives were behind him during this time.

The detectives pulled the Camaro over at 36th and Ames Street. Detective Ramsay approached the passenger side of the vehicle. Defendant was the driver and Brittani Garrison was his passenger. Detective Ramsay asked Defendant for the vehicle's registration and for identification from both Defendant and Garrison. Defendant could not produce any identification or anything with his name on it but was able to provide the vehicle registration information. The vehicle was not registered to Defendant or Garrison. Garrison provided her identification to Detective Ramsay. Detective Clark then approached the passenger side of the vehicle, and Detective Ramsay moved to the driver's side. Detective Ramsay asked Defendant for his name, date of birth, address and social security number in order to run the data check.

Upon returning to the cruiser, Detective Ramsay started running data checks on Defendant, Garrison, and the vehicle. Detective Ramsay first performed a background check on the occupants through a local data system, accessible from his cruiser. According to the results of the local Nebraska system check, Defendant had a suspended driver's license in Nebraska, and he had felony convictions for possessing methamphetamine and being a felon in possession of a firearm. The Nebraska data check also showed a violation in Iowa but did not provide detailed information about the violation.

Detective Ramsay determined that he needed to perform an NCIC interstate background "Channel 5" check. Because the Channel 5 check could not be completed from the cruiser, he used a radio to call into Central Headquarters. Overall, the background checks took longer than a standard check because Defendant did not have identification.

While Detective Ramsay was working on the data check, Detective Clark spoke to Defendant. Detective Clark asked Defendant if there was anything illegal in the vehicle. Defendant responded no. Detective Clark asked Defendant if he could search his vehicle. Defendant responded by saying it was not his vehicle so he could not give his permission. Detective Clark testified that it appeared Defendant was trying to separate himself from the vehicle, which raised Detective Clark's suspicion. Adding to Detective Clark's suspicion, Defendant appeared to be frustrated, nervous, and would not make eye contact with Detective Clark. Detective Clark testified that, based on his experience, this type of behavior is common in individuals who are trying to hide something about their vehicles. As a result of Defendant's answers and reactions, Detective Clark thought there might be something illegal in the vehicle.

Detective Clark returned to the cruiser and told Detective Ramsay about Defendant's behavior. At that point, given what the detectives knew from Defendant's behavior and the local background check, they decided to call for a K-9 unit. Detective Ramsay requested the K-9 unit approximately eight minutes into the traffic stop. Following the request, Detective Clark and Detective Ramsay discussed Defendant's criminal record. Detective Ramsay informed Detective Clark that Defendant was a felon with convictions for drug and gun charges.

At that point, Defendant's Iowa record check had not been completed. Detective Ramsay also had not yet completed the background check on Garrison. Detective Clark returned to Defendant's vehicle to remove Defendant and Garrison from the vehicle. At that time, Detective Ramsay radioed in the Channel 5 check. Detective Ramsay's call came approximately nine minutes into the traffic stop and approximately five minutes after Detective Ramsey started the local checks on his computer.

When Detective Clark returned to Defendant's vehicle, he asked Defendant multiple times to exit the vehicle. Defendant repeatedly refused and asked why he had to exit the vehicle. Detective Clark explained that Defendant was under arrest for driving while under suspension. Defendant eventually exited the vehicle and Detective Clark performed a pat-down search. Defendant became somewhat aggressive and resisted Detective Clark's efforts to place him in handcuffs. Detective Ramsay exited the cruiser and approached Defendant's vehicle because Defendant was not following Detective Clark's commands. At that point, the Channel 5 check was still not complete. As Defendant was being placed in handcuffs, approximately ten minutes into the traffic stop, K-9 Officer Pignotti arrived on the scene with his dog.

Once Defendant and Garrison were in handcuffs, the dog performed a sniff search and indicated to narcotics in the vehicle. Officers then searched the vehicle and located what appeared to be methamphetamine. The Channel 5 check results did not come back until after the dog alerted and the officers' search had begun.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a), the Court shall make a *de novo* review of the portions of the Magistrate's Findings and Recommendation to which

objections have been made. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings and recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

**1. Probable Cause to Stop Defendant**

Defendant did not object to the F&R finding that Detectives Ramsay and Clark had probable cause to stop Defendant. After thorough review of the record and the Magistrate Judge's findings, the Court concludes that the detectives had probable cause to stop the vehicle and the Court adopts the recommendation of the magistrate judge.

**2. Length of Stop and Reasonable Suspicion for Dog Sniff**

Defendant argues that the detectives unlawfully prolonged the traffic stop because they ran the Channel 5 check to ascertain the specific violations in Iowa. Defendant also argues the detectives lacked reasonable suspicion to broaden the investigation to include a dog sniff. Based on a thorough review of the record, the Court finds the data check was reasonable, and the detectives had reasonable suspicion to conduct a dog sniff.

### A. Length of the Stop

Under the Fourth Amendment, "an officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation." *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016). "After a law enforcement officer initiates a traffic stop, the officer 'may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation.'" *United States v. Englehart*, 811 F.3d 1034, 1040 (8th Cir. 2016) (quoting *United States v. Quintero-Felix*, 714 F.3d 563, 567

(8th Cir. 2013). These tasks may involve "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015). "An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).

Absent reasonable suspicion, an officer may not broaden the investigation "'beyond the time reasonably required to complete the mission' of issuing a warning ticket." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (quoting *Illinois v. Caballes*, 543 U.S. at 407). "A dog sniff . . . is a measure aimed at detecting evidence of ordinary criminal wrongdoing." *Id.* (citations and quotations omitted). The reasonableness of the length of a traffic stop and a resulting detention are fact-based questions, and a traffic stop is not subject to a defined limit. *United States v. Riley,* 684 F.3d 758, 765 (8th Cir. 2012). Accordingly, detention "beyond completion of the traffic infraction investigation" must be supported by "reasonable suspicion of criminal activity." *Rodriguez,* 135 S. Ct. at 1616-17.

The traffic stop was not unlawfully prolonged beyond the time reasonably required to complete the purpose of the stop. Detective Ramsay obtained the vehicle identification, Garrison's identification, and Defendant's information, then immediately proceeded to the cruiser to initiate background checks while Detective Clark remained with the vehicle. The background checks took extra time to complete because Defendant could not provide

identification. Further, Detective Ramsay reasonably concluded that a Channel 5 check was necessary to determine the extent and nature of Defendant's violation history in Iowa. *See Rodriguez,* 135 S. Ct. at 1615 (checking identification and determining whether there are any outstanding warrants are acceptable tasks that do not unlawfully extend a traffic stop). Further, Defendant's behavior in failing to comply required the attention of both officers. All these activities took place within 8 minutes of the initial stop, and the K-9 unit arrived and the dog performed the sniff within 10 minutes of the initial stop. Accordingly, the detectives did not unlawfully prolong the traffic stop by running the Channel 5 check, and there is no evidence that the detectives used the check as a delay tactic in order to obtain a dog sniff.

### 2. Reasonable Suspicion to Conduct a Dog Sniff

Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *United States v. Smith*, 789 F.3d 923, 928 (8th Cir. 2015) (quoting *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994)). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007). Law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Smith*, 789 F.3d at 928 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). As a result, "due weight must be given 'to the factual inferences drawn by the law enforcement officer.'" *United States v. Donnelly*, 475 F.3d 946, 952 (8th Cir. 2007) (quoting *Arvizu*, 534 U.S. at 277).

To establish reasonable suspicion, "'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' further investigation." *Woods*, 829 F.3d at 679 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Although some factors may appear innocent when considered alone, "a combination of factors may give rise to reasonable suspicion." *United States v. Briasco*, 640 F.3d 857, 860 (8th Cir. 2011). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Beck*, 140 F.3d 1129, 1137 (8th Cir. 1998) (quoting *United States v. Halls*, 40 F.3d 275, 276 (8th Cir. 1994)). "However, in order to measure the totality of the circumstances, it is necessary to first break the reasonable suspicion into separate observations." *United States v. Johnson*, No. 8:16CR241, 2017 WL 933044, at *5 (D. Neb. Mar. 9, 2017) (quoting *Beck*, 140 F.3d at 1137-39 (analyzing each observation separately before combining them in a totality of the circumstances test)).

Through the course of the traffic stop, the detectives developed reasonable suspicion of criminal activity. Prior to the traffic stop, the detectives observed Defendant making multiple turns that seemed arbitrary and evasive. Detective Clark recognized Defendant attempting to separate himself from the vehicle by stating several times that it was not his vehicle when asked if the detective could search the car. Detective Clark found Defendant was evasive in his answering of questions. Following the interactions of Detective Clark with Defendant, his suspicions were further heightened with the results of the Nebraska criminal history check, showing Defendant was a felon with convictions for drug and gun charges.

Both arresting officers are members of the Omaha Police Department's gang unit. Detective Ramsay has seven years' experience on the police force, and a year and a half with the gang unit. Detective Clark has almost four years' experience on the police force, with eight months with the gang unit specifically. Viewing the evidence through their experience, the detectives articulated more than "an inchoate and unparticularized suspicion" and had reasonable suspicion as to Defendant's criminal activity. The Court adopts the magistrate judge's recommendation.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation, ECF No. 28, are adopted in their entirety;

2. The Motion to Suppress filed by the Defendant Nicholas Chenier, ECF No. 16, is denied;

3. Defendant's Objection to the F&R, ECF Nos. 29, is overruled; and

4. The Clerk of Court is directed to terminate the Government's Response, ECF No. 31.

Dated this 11th day of August, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge